G reteñís J.
delivered the opinion of the court.
The hill which was filed the 1st day of April, 1835', alleges that the complainant in 1833 recovered a judgment against the defendant, Mallory, assheriffof Stewart county, for the sum of $209 37, debt and damages and ‡6 44, costs of suit. That an execution had issued and the sheriff had returned “no property found.’ The bill also alleges that Mallory is insolvent, and has no property whereon to levy, but that Mallory owns alargo number of shares of the stock of the Bank of the State of Tennessee, at the branch at Clarksville, but to what precise amount complainant does not know. The bill further states, that said, branch has been discontinued, and the books removed to Nashvrffe',aj)d..pi it into the hands of Robert Far- *197 quharson, where it can he ascertained how much'stock said 1 7 Mallorj owns. The bill prays that said Mallory, Bank and Farnuharson each be made defendants, and that they answer 1 . J and discover how much stock'said Mallory owns in said hank, and that an injunction issue to prevent a transfer of any part of it, and to restrain the payment to Mallory oí any dividends.
Robert Farquharson answered for himself and the bank,, and states that Mallory was the owner of twenty shares of the capital stock of said bank, on which had been paid $500, that in November, 1819, he had borrowed of the bank $500, for which sum bis note was discounted in said bank, which was continued under discount until 8th February, 1822, when he receipted for $375, it being three fourths of bis stock, which was applied to the payment of his note, leaving a balance of $125, due the bank, and he still retained one fourth of his stock worth $125. On the 1st day of January, 1833, half the remaining stock, $fi2 50, was applied to the discharge of so much of his note, and on 1st January, 1835, one half the balance, $31 25, was applied in the same manner, leaving of stock, $31 25, and a like sum due the bank. The bill was taken for confessed against the defendant Mallory, and the cause was regularly set down for hearing as to him ex parte.
The chancellor decreed that the stock of the defendant, Mallory, which had not been transferred by himself consisting of five shares at twenty five dollars each, he sold and the proceeds be paid to the complainant. From this decree the Bank appealed, and it is now insisted that the Bank has a right to retain this stock in extinguishment of its own debt. In the first place it is insisted, the money is in the hands of the Bank, and having the money in its hands, and as good an equity that it shall be applied to its debt, as the complainant has to obtain it in extinguishment of his claim, there is nothing to mote a court of equity to take it out of the hands of the one to give it to the other. If the facts upon which this argument is made were as the counsel supposes, there would be much force in the position. But it is a mistake to suppose that the stock of an individual, consists of so much money owned by him in the bank. The money in the bank is the property of the institution, and to the ownership of which, the stockholder has no *198 more claim than a person has who is not at all connected with the bank. I he stockholder has an entire and perfect ownership over his own stock and may sell and transfer it to whomsoever he pleases, and from which the bank has no power to restrain him. Angel and Ames on Corporations, 318, 319: 3 John. Cases, 238:: 8 Pick. 9.
This stock consists of a certificate of the bank thSt the stockholder is entitled to so many shares of the capital stock of the bank. It entitles him to his propoition of the profits or dividends which may be declared from time to time, and when the institution closes its business, to his proportion of the capital slock and profits which may remain to be divided. The stock of an individual, is then, property in his own hands and subject to his own control. By the act of 1832, c 9, § i. it is made-liable to the payment of debts in the way this stock is sought to be reached by the present bill.
But it is said that act requires that there should be a judgment and execution against the debtor before his stock can be made liab'e, and that this judgment is void and therefore docs not authorise this proceeding.
It is true, that if the judgment which is proved were void and Mallory weie resisting it, no decree could be made; but here Mallory does not resist it.
The bid alleges the existence of a judgment and execution, and Mallory having failed to answer, the bill is taken for confessed, and a decree was made accordingly, 'i he bank was no necessary party to the bill in order to subject the stock of Ma’lory to the payment of his debt. The only reason forma king the bank a parly was to get a discovery of the number of shares owned by the defendant, and to have the bank before the court, that it might be compelled to make such transier of the stock on its book as the court might direct.
Mallory did not appeal, and the decree ordering a sale of his stock remains in force andunappealed from. As the bank has no interest in this question, we think it has no right to resist the decree or to call in question the validity of the judgment against Mallory. Let the decree be affirmed.
Decree affirmed,